G. S. BLAKESLEE & CO. *v.* REINHOLD MANUFACTURING CO.

1. SALES—CONTRACT—CONSTRUCTION.

A contract to furnish certain ice chopping machines on consignment, and an addition thereto providing for the sale of certain other machines of similar use, examined, and *held*, that the addition to the contract stated its own terms of payment and did not adopt the provisions of the original contract.

2. TRIAL—INSTRUCTIONS—MISSTATEMENT OF TESTIMONY.

An instruction stating that plaintiffs had testified to a certain matter is properly refused where the most that could be said is that plaintiffs had testified to certain admissions on the part of defendants from which such an inference could be drawn.

3. SAVING QUESTIONS FOR REVIEW — REASONS FOR RULING — EXCEPTIONS—NECESSITY.

Error in overruling a motion for a new trial cannot be considered where no reasons were given for the ruling and no exceptions were taken.

Error to Wayne; Mandell, J. Submitted April 15, 1908. (Docket No. 89.) Decided June 27, 1908.

Assumpsit by G. S. Blakeslee & Company against the Reinhold Manufacturing Company for the breach of a contract for the sale of certain machines. There was judgment for defendant, and plaintiff brings error. Affirmed.

*E. T. Berger*, for appellant.

*Thomas Mulvihill* and *Thomas W. Fitzsimmons*, for appellee.

BLAIR, J. On the 3d day of November, 1902, the parties to this suit entered into an agreement whereby the defendant, Reinhold Manufacturing Company, agreed to furnish and sell exclusively for one year to plaintiff, G. S. Blakeslee & Company, " their machine, known as the 'Reinhold Ice Chopper,' upon which patents are pending in the United States, on consignment, to the party of the second part at the following price, to wit: Twenty-one ($21) dollars for each and every machine delivered to the party of the second part." The agreement contained further provisions, as follows:

"Said parties further agree that at the end of one (1) year from date hereof they expressly give the said party of the second part the privilege and option of renewing this contract for the further period of two (2) years on the same terms. * * *

" In and for the consideration of the above promises and covenants, the party of the second part agrees that as soon as it has sold or disposed of any machine, delivered to it by the parties of the first part, it will within thirty (30) days from the date of such sale, pay the parties of the first part the sum of twenty-one ($21) dollars for each and every machine together with the amount of freight advanced by the parties of the first part in delivering said machines f. o. b. to either of the above destinations by the party of the second part. * * *

"The party of the second part further agrees that it

will devote its best efforts to promote the sale of said machines and will do everything in its power to increase the sale thereof and to aid the parties of the first part in disposing of their product."

In February, 1903, the following writing was executed by the parties:

" This is an addition to the original contract made by Frank J. Reinhold and Alexander H. Reinhold and the G. S. Blakeslee Co., February, 1903.

" The first party hereby agrees to furnish the said second party their Gem ice choppers on the following terms, for one year from date. Price is to be twelve ($12) dollars less five (5%) per cent. in thirty (30) days and half freight allowed in Chicago.

"Said first party also agrees to furnish to said second party their cube machines on the following terms for one year. Price to be forty-five ($45) dollars f. o. b. Detroit for the term of six (6) months. After that date the said first party is to receive an additional twenty-five ($25) dollars, if the machine is then found satisfactory."

September 1st, 1903, the plaintiff company gave notice of the exercise of their option to renew the contract for the further period of two years, as follows:

" The contract which we have with you under date of November 3d, 1902, for the exclusive sale of your ice machine, will soon have run its first year and we therefore desire to exercise the option given us in said contract for a renewal of a further period of two years, by advising you that we wish to so renew it on the same terms and conditions."

The parties having got into difficulty with reference to the performance of the contract, in November, 1905, the Reinhold Manufacturing Company began suit in the justice's court for the city of Detroit against G. S. Blakeslee & Company to recover from it a balance claimed due, filing a bill of particulars of its claim amounting to $589.04, upon which amount there was credited to the Blakeslee Company $154, as follows: "Allowance for selling machines: 16 No. 1 choppers at $7 each, $112;

12 Gems at $3.50 each, $42;" leaving a balance due October 17, 1903, of $435.04, for which amount the Reinhold Company recovered judgment against the Blakeslee Company. From this judgment, the Blakeslee Company appealed to the circuit court, and thereafter brought suit in the circuit court for the county of Wayne against the Reinhold Company to recover damages for alleged breaches of the agreement by the said Reinhold Manufacturing Company. Upon motion of counsel for the Blakeslee Company, both cases were consolidated and tried together before a jury, resulting in a verdict in favor of the Reinhold Manufacturing Company, defendant and appellee herein, for $448.

On the trial in the circuit court, G. S. Blakeslee, president of plaintiff company, testified, among other things, as follows:

" Reinhold kept me supplied with ice-choppers up to September, 1903. I think we ordered two or three cube cutters after March 24, 1903. I think we got three. The last order we gave Reinhold for ice machines was September 15, 1903. * * *

" I remember coming to Detroit on October 16, 1903, to look over their business with a view to buying it. There was considerable talk and Mr. Reinhold, Jr., figured up what he thought could be done.

"*Q.* We just want the conversation, if you can remember; and if you can't, just say so.

"*A.* I can't remember to give very much of the details, but I remember that, and I remember another thing that struck me very forcibly. They said that they had already themselves sold direct about 100 choppers outside of our contract. I was astonished. I remember that distinctly.

"*Q.* Who was that?

"*A.* Why, the senior made the remark first. * * *

"*Q.* Did the young man say anything in relation to it?

"*A.* He did, he admitted it. * * *

" We renewed the contract two years from November, 1903, but did not push the business as hard as we had been doing because we did not know where we could get the stock. Mr. Reinhold having refused other orders under the contract. We did not pay for the ones we had

on hand because I considered he owed us instead of us owing him anything.

"*Q.* He owed you for what?

"*A.* Machines that he admitted that he had sold during the first year.

"*Q.* He admitted that he sold those when?

"*A.* When Mr. Trelevan and I were here.

"*Q.* That was on October 16th?

"*A.* Yes.

"*Q.* And he told you at that time that he had sold one hundred?

"*A.* Yes.    *    *    *

"*Q.* He told you, did he, that he sold them during the life of your contract?

"*A.* Yes.    *    *    *

"I don't remember ordering any ice choppers that we contracted to buy and sell, after September 5, 1903, that were not filled. I sold a few Davenport ice choppers after November, 1903. They were different from the Reinholds. I don't think we sold any other ice chopper after we had disposed of the machines we had on hand belonging to Reinhold, November, 1903. We have since sold a Reinhold chopper, but not the Reinhold in this case. We have an ice shaver similar to Reinhold's. I don't swear I am not using part of Mr. Reinhold's machine on the machine I am using. I won't swear that I didn't sell my machine in 1904. I would not swear that I didn't have one of my machines in Tom Schmolly's on Wabash avenue, in Chicago, in April, 1904. I might have such a man's name on our books. I don't remember.    *    *    *

"I don't remember of advertising the Reinhold ice machine in 1904. I may have advertised for my ice shaving machine in 1904. I wanted to keep my name before the public as making ice machines; I must have had a machine, or thought I had, when I advertised.    *    *    *

"We sold 115 ice choppers the first year. Then after we found we could not get any more goods, we sold slowly. I did not take any further orders for these. We took the same steps in regard to pushing the cube cutters as we did with the choppers. We had orders for approximately twenty-eight cube cutters. We kept them in stock in Chicago and filled the orders from there, but we only received about three from the Reinholds.    *    *    *    On the cube cutters the difference between the price paid and

the price that we would have received for them if we had
been able to fill the orders would have been $675."

Mr. Reinhold testified on the trial in the circuit court, in
his own behalf:

"Blakeslee told me October 16, 1903, that he was not
in shape to take care of the territory east of Buffalo and
was willing to release that territory and take everything
west of Buffalo. * * * There were no goods ordered
after September 18, 1903. If they would have paid us
what we had coming, we were ready to fill orders. They
never disputed the bill for $550.84. I don't think there
was any payment after November 12, 1903. The last order
we got from Blakeslee was September 17, 1903. * * * I
did not get any orders after September, 1903, and if Mr.
Blakeslee wished any machines he would have got them
if he paid for them. I saw a machine, on May 5, 1904,
in Tom Schmolly's place on Wabash avenue, Chicago.
It was a No. 1 ice chopper. It was Blakeslee's, and was
an imitation of our machine.

" Q. Then you did sell 28 that year, that you are will-
ing to admit that you sold?

" A. Yes, in fact we allowed you that in justice's court
in that case. If you look up your statement, you will find
it.

" Q. You are willing to allow for these choppers?

" A. Yes, for commission on them.

" Q. And you are willing to allow the Gem choppers?

" A. Yes, I am willing to allow commissions on one-
half of them under our arrangement.

" Q. The contract doesn't say anything about half of it.

" A. There is a letter there that shows that they are
entitled to one-half and we could have the other half.

" Q. That you sold?

" A. Yes.

" Q. Where?

" A. Around the city here.

" Q. Did you sell any of these machines outside?

" A. No, I didn't have money enough to go out of town
to sell any at that time."

On November 25, 1903, the Blakeslee Company wrote
to the Reinhold Company a letter, from which we quote
the following:

"We understand, however, that in express opposition to the terms of the contract you have been selling these goods to parties other than us, and while we are willing to share profits with you on goods sold by you in your own city we must most emphatically object to any sale made by you out of Detroit of which we do not get the full profit. We only recently learned of this and in our last letter asked you for an accounting which we did not get. Unless we get a full statement from you by return mail showing what you have sold we shall consider the contract broken by you from the date of your first sale of a machine after you signed the contract with us and shall take vigorous steps to enforce our right in this regard. We never supposed that there would be any difficulty regarding the settlement of this part of the account or we would have spoken about it before, as to the machines which we knew you had sold at the time. As to any money which you claim we owe you, we desire to say that same is not due you until the machines are sold, and even if it were due, we would be compelled to await your action regarding our claim before sending you a check."

The assignments of error raise the following questions:

(1) That the court erred in not submitting defendant's 7th request to charge to the jury, as follows:

"I charge you that the fact that the Blakeslees had a number of orders for certain machines, known as cube cutters, on hand, namely, 28, which the Reinholds refused to fill, is proof of the establishment of the market to the extent of such machines, and the Blakeslees are entitled to recover their loss upon the number of cube cutters that the Reinholds refused to furnish to fill these orders."

(2) That the court erred in not submitting the appellant's 9th request to charge to the jury, as follows:

"I charge you that you may positively allow the Blakeslee Company their profits on the machines admitted on the stand to have been sold during the contract period. [This was admitted by the Reinholds to have been 28.] The Blakeslees have testified that these machines numbered 100. This number is not admitted by the Reinholds and you are therefore at liberty to draw your own estimate as to the amount actually sold by them, and when

you have fixed this estimate, you are then to allow the Blakeslees their profit on the machines sold."

(3) That the court erred in charging the jury that the Blakeslees were bound to make payment for machines as delivered, when the contract expressly states that payment was to be made within 30 days after machines had actually been sold.

(4) That the court erred in refusing to give appellant's 2d, 3d, and 5th requests to charge.

(5) That the court erred in overruling the appellant's motion to vacate and set aside the verdict rendered by the jury in favor of the Reinholds for reasons set up in the said motion and supplemental motion of appellant, etc.

1. The principal question, in view of the trial court, for determination, and which we think was properly submitted to the jury, was as to who really broke the contract. It seems apparent from the contract, as well as from the record, that the parties were dealing with reference to three different forms of ice machines. The original contract related to the "Reinhold Ice Chopper," which was to be furnished at the price of $21, and to be paid for within 30 days from date of sale by the consignee.

The addition to the contract referred to, 1st, "Gem Ice Choppers" at a price of "Twelve ($12) dollars, less five (5%) per cent. in thirty (30) days and half freight allowed in Chicago;" 2d, "Cube machines on the following terms for one year. Price to be forty-five ($45) dollars f. o. b. Detroit for the term of six (6) months. After that date the said first party is to receive an additional twenty-five ($25) dollars, if the machine is then found satisfactory."

We are of the opinion that the court correctly construed this addition to the contract as stating its own terms of payment and not adopting with reference thereto the provision of the original contract, which related solely to the "Reinhold Ice Chopper."

The plaintiff company not only failed to show compliance on its part with the terms of the contract as to pay-

ment for the "Cube cutters," but, on the contrary, proved its refusal to comply with such terms. It follows that the request was properly refused.

2. It appears from the letter of the Blakeslee Company that they were willing to share profits with the defendant "on goods sold by you in your own city," and it further appears from the bill of particulars that they were given credit for one-half the commissions on the machines admitted to have been sold, and the only machines admitted to have been sold, by the defendant. Mr. Reinhold testified that these 28 machines were sold in the city of Detroit. The Blakeslee Company received the benefit of the commission, in accordance with the terms of their letter, in the judgment in justice's court, and apparently received the benefit thereof in the verdict of the jury in the circuit court. The trial judge covered this request in his charge, as follows:

"If you find that the plaintiff, regardless of the terms of the contract, sold either one hundred machines or any number less than one hundred, or whatever number you determine the evidence shows, then you should deduct the amount of the profits that the defendant would have made if it had sold these machines from the claim of the plaintiff, which is $500."

The request as presented required the court to charge the jury, as to the number of machines sold, that "The Blakeslees have testified that these machines numbered 100." The Blakeslees had not so testified, but only to alleged admissions by the Reinholds, and the circuit judge was, therefore, justified in refusing the request as presented.

3. What we have said on the first point renders it unnecessary to discuss this point.

4. The second and third requests to charge required the court to determine as a matter of law that the contract had been broken by the Reinhold Company, which the court very properly refused to do. The fifth request was given in terms.

5. No reasons were filed by the court for overruling the motion to set aside the verdict, nor exceptions taken, and the matter is not before us for consideration upon this record.

The judgment is affirmed.

GRANT, C. J., and MONTGOMERY, CARPENTER, and MC-ALVAY, JJ., concurred.